19013

Mrs. Linda W. WINDHAM, Individually and as Executrix under the Last Will and Testament of W. J. Jordan, Respondent, v. Martha Jane LLOYD, et al., of whom Charles W. Laffoday, Jr., is, Appellant.

(172 S. E. (2d) 117)

*Messrs. Malcolm K. Johnson* and *Floyd & Craig,* of Hartsville, *for Appellant,*

*Messrs. Ernest L. Cook,* of Hartsville, and *Yarborough, Parrott & Anderson,* of Florence, *for Respondents,*

February 5, 1970.

BUSSEY, Justice.

This action for partition and sale of real property was commenced in the Court of Common Pleas for Darlington County on February 15, 1962. Involved is some thirteen acres of land situate in Lamar in Darlington County and the controversy is as to the title to said land. Defendant-appellant Charles W. Laffoday, Jr. claims title to the property by reason of an alleged deed to him from Mrs. Betty Jordan in the year 1930. The plaintiff and the other defendants contested the validity of the said alleged deed and claimed the property through inheritance from Betty Jordan and one as a devisee of Mrs. Jordan's surviving husband, Will J. Jordan. The cause was referred to the master of Darlington County who filed his report December 17, 1963, which report was confirmed by a decree of the circuit court on December 10, 1964. All key issues of fact and questions of law were decided adversely to the appellant Laffoday by both the master and the circuit court. Neither the record nor the briefs contain any explanation of why this appeal did not reach this court until the December 1969 term.

On the 10th day of March 1930, Betty Jordan was the owner of the thirteen acres of land presently involved, such being composed of three parcels. At the same time, there was pending against her an action to foreclose a mortgage on thirteen acres of land which was likewise composed of three separate parcels. On said date, Betty Jordan allegedly executed a deed conveying the thirteen acres involved in this proceeding to the appellant, such purported deed being duly recorded on March 12, 1930. Shortly thereafter, a decree was issued in the foreclosure action and the mortgaged real property sold and bought in by the mortgagee. The respondents claim that the mortgaged premises and the premises involved herein are one and the same, whereas the appellant claims that there is a material variance and that they are not the same. The master found as a fact that the

two properties were the same, but we find it unnecessary to decide whether or not he was correct in this respect.

In any event, the mortgagee subsequently conveyed the premises which it acquired at the mortgage foreclosure sale to the County of Darlington, which, in turn, reconveyed the same to Betty Jordan in August 1937. As a result of the foreclosure proceeding, a deficiency judgment was taken against Betty Jordan and later assigned to Charles W. Laffoday, the father of the appellant, who subsequently satisfied the same on October 13, 1933. On May 5, 1932, Charles W. Laffoday, Sr. executed to Betty Jordan a deed purportedly reconveying to Betty Jordan the premises involved in this action which were allegedly conveyed to the appellant on March 10, 1930. This deed to Betty Jordan, while purportedly executed by "Charles W. Laffoday, Jr." was admittedly executed by Laffoday, Sr. The appellant, Charles W. Laffoday, Jr., was born on March 7, 1922, and at the time of the alleged conveyance to him in 1930 was eight years of age. He attained his majority on March 7, 1943.

Whether the premises involved in this action are precisely the same as the premises involved in the foreclosure action, or not, the evidence is undisputed that Betty Jordan and her husband were in complete and exclusive possession of the premises involved in this action from prior to the year 1930 until the death of Betty Jordan, on July 3, 1955, and thereafter her husband, Will Jordan, had exclusive possession until his death on March 18, 1957. The appellant asserted no claim to the property during the lives of either of the Jordans, has never been in possession, and took no legal action to assert any claim thereto until he was made a defendant in this action in 1962, approximately nineteen years after attaining his majority.

Appellant's exceptions are thirty-eight in number and he states and argues four different questions. In our view, it is unnecessary to decide any other question, if appellant's first stated question be decided adversely to him. That ques-

tion is, "Was it error to refuse to admit appellant's deed into evidence?"

The appellant's claim to the property arises solely out of the alleged deed to him in the year 1930, and in the absence of proof of such deed his claim falls. There is evidence that Betty Jordan was an illiterate person who apparently signed by her mark, the manner in which appellant's deed was purportedly signed. The magistrate who allegedly prepared the deed to appellant and the purported witnesses to the execution thereof were all dead at the time of the trial. The validity of the purported deed upon which appellant relies was challenged on various factual grounds alleged in the complaint. The original deed upon which a party relies is always the best evidence, and, under the recited circumstances, appellant should have been fully aware of the vital importance of offering the original deed in evidence, if available. Appellant, however, did not offer in evidence the original of the alleged deed, but offered in proof of such a photostatic copy, a certified copy of the deed as recorded, and the record of said deed in Darlington County. All of the proffered evidence was secondary evidence.

The only light thrown upon the whereabouts of the alleged original deed is contained in the following question and answer.

"Q. Mr. Laffoday, do you know where the original deed is?

"A. No, I don't, I had this in my possession one time and turned it over to a lawyer and I don't know what he did with it."

The appellant, it will be noted, does not identify the mentioned lawyer; specify the time or circumstances, nor does he show that he has made any effort whatsoever to search for or ascertain the whereabouts of the original.

In determining that the secondary evidence should be excluded, the master stated, "I am not convinced from the testimony that the original was lost or de-

stroyed," and his finding in this respect was confirmed by the circuit judge. The admissibility of a copy of a document, in lieu of the original, under the terms of Code Sec. 26-101, is dependent upon loss of the original. Again, the admissibility of the record book, under the common law rule and the provisions of Code Sec. 26-805, is depedent upon evidence tending to prove that the original deed was lost or not to be had. *Wilson et al. v. Moseley,* 113 S. C. 278, 102 S. E. 330 (1920); *State v. Crocker,* 49 S. C. 242, 27 S. E. 49 (1897); *Macedonia Baptist Church v. Columbia,* 195 S. C. 59, 10 S. E. (2d) 350 (1940). In the last cited case the court discussed at length the common law rule whereby, and the circumstances under which, a lost deed can be proved by the record thereof.

The preliminary inquiry as to whether there had been sufficient evidence tending to prove the loss, destruction or unavailability of an original document to justify the admission of secondary evidence is an inquiry, the answer to which, in large measure, is within the discretion of the trial judge, although such discretion is not a completely uncontrolled one. *Beaty & Co. v. Southern Ry.,* 80 S. C. 527, 61 S. E. 1006 (1908); *Sample v. Gulf Refining Co.,* 183 S. C. 399, 191 S. E. 209 (1937). In the case of *Uzzell v. Horn,* 71 S. C. 426, 51 S. E. 253 (1905), this court quoted at length from Greenleaf on Evidence as to the required degree of proof of loss or destruction of an original document to justify the admission of secondary evidence. When the applicable authorities and the principles therein enunciated are applied to the circumstances of this case and the very meager information offered by the appellant as to the whereabouts of the alleged original deed, we are convinced that there was no abuse of discretion whatever on the part of the lower court in excluding the proffered secondary evidence.

The foregoing conclusion is dispositive of the appeal. Without any proof whatever of the deed upon which he

relies, the appellant has no claim upon or interest in the property here involved.

Such conclusion makes it unnecessary to discuss in detail any other questions raised by the appeal. Lest it be thought by appellant, however, that we have disposed of an otherwise meritorious appeal by the application of a technical rule of procedure or evidence, we add that we are convinced from the entire record that the master and the lower court correctly decided that the appellant is barred from any claim to this property by virtue of both laches and adverse possession.

The judgment of the lower court is affirmed.

Moss, C. J. and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.